1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

THOMAS LOPEZ,                          )     1:11cv01065 AWI DLB
                                       )
              Plaintiff,               )     FINDINGS AND RECOMMENDATIONS
                                       )     REGARDING PLAINTIFF'S
                                       )     SOCIAL SECURITY COMPLAINT
                                       )
       vs.                             )
                                       )
MICHAEL J. ASTRUE, Commissioner of     )
Social Security,                       )
                                       )
              Defendant.               )
_____)

## BACKGROUND

Plaintiff Thomas Lopez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Titles II and XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Magistrate Judge for findings and recommendations to the District Court.

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed for DIB and SSI on May 9, 2008.  AR 207-16, 217-20.  He alleged disability

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

1    since January 8, 2008, due to his back, left foot and heel and manic depression.  AR 244.  After

2    being denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative

3    Law Judge ("ALJ").  AR 109-12, 114-18, 122-23.  On May 10, 2010, ALJ Daniel Heely held a

4    hearing.  AR 52-82.  ALJ Heely denied benefits on July 23, 2010.  AR 38-50.  On May 17, 2011, the

5    Appeals Council denied review.  AR 1-5.

6         <u>Hearing Testimony</u>

7         ALJ Heely held a hearing on May 10, 2010.  Plaintiff appeared with his attorney, Gina Fazio.

8    Vocational expert ("VE") George Meyers also appeared and testified.  AR 54.

9         Plaintiff was born in September 1960.  He graduated from high school and attended Modesto

10   Junior College for about two months.  He attended truck driving school and earned a Class A license,

11   which is still valid.  He is not currently working.  AR 57-58.

12        Plaintiff testified that he worked after his alleged onset date of January 1, 2008.  He drove a

13   truck for two months in 2009.  It was seasonal work for Antonini's Food Express driving tomato

14   trucks locally.  He averaged six or seven hours a day, seven days a week.  The job ended because it

15   was seasonal.  After that, he collected unemployment until about two weeks prior to the hearing.

16   While collecting unemployment, he registered for CalWorks and looked for jobs.  He has done

17   seasonal work for Antonini's for the past three years.  AR 58-61.

18        Plaintiff also testified that he worked for JB Hunt Transport driving a truck.  He got fired

19   from that job on January 8, 2008.  He did no other work for JB Hunt in 2008.  AR 61-62.

20        Plaintiff reported that his right shoulder bothers him because of bursitis.  He is recovering

21   from a stroke nine years earlier.  His left foot is still numb, his left leg bothers him and his upper

22   back numbs up if he tries to do anything, but his driver's privilege has not been restricted.  AR 62-

23   64.  Plaintiff also has high cholesterol and recently gave up smoking cigars because of his blood

24   pressure.  He has never been diagnosed with breathing problems.  AR 64-65.

25        Plaintiff indicated that he receives medical treatment from Dr. Bishop at the VA.  He has

26   applied for a service connected disability rating from the VA.  He also is seeing a psychiatrist at the

27   VA for depression.  AR 66-67.

28

<center>2</center>

Plaintiff testified that he lives with his parents.  On a good day, he watches TV for about three hours.  He doesn't own a computer, but uses one at the library to look up things he sees on TV that look interesting and UFOs.  He is interested in UFOs because he saw one when he was young.  It was bright orange like a giant honeycomb.  He thinks he has seen one since then.  AR 67-69.

Plaintiff further testified that he goes to church.  He was going every Sunday, but lately he has not been going because it is too hard to get up.  At home, he does his laundry and takes care of his stuff.  He does not cook, but can use the microwave.  AR 69-70.

After January 1, 2008, he has not taken any long trips more than 100 miles.  He drives a car, but it bothers him to sit down for a long time and his left foot gives him a lot of pain.  AR 70-71.

Plaintiff also responded to questions from his attorney.  He testified that he has had shoulder problems for about 20 years.  His doctor is giving him pain pills and injections, but the injections did not help.  He has problems reaching overhead with his right arm.  It keeps "popping out" and it hurts to lift anything.  With help, he can probably lift about 30 pounds on the right side.  He can comfortably lift about 10 pounds on the right side and about 20 pounds on the left side.  His left side is still weak from his stroke and his left hand is not as strong as it used to be.  He can hold onto things and is able to take care of his personal needs, such as dressing and bathing.  AR 72-74.

Plaintiff clarified that he was fired in January 2008 because he had three wrecks in about six months.  He would have panic attacks and hit things.  He has panic attacks about two or three times a month.  AR 75-76.

Plaintiff testified that he has problems with his lower back all the way up to his neck.  He can sit about a half hour and then everything starts to hurt, including his left leg.  He can walk about a block and then his leg starts to bother him.  He takes medication, aspirin and uses a stress machine.  He has to lie down during the day for about two or three hours at a time.  He sleeps a lot because of the pain.  AR 76-77.

Plaintiff believed that his depression and anxiety were keeping him from working.  He gets nervous, mad and gets in fights at work.  He has problems with his concentration and memory, feeling like he is "spacing out."  He gets bored watching TV.  When he reads something, he has to

3

1    re-read it and he can't pick it up.  AR 77-78.

2        The VE testified that Plaintiff's past work as a truck driver was medium, semi-skilled with an

3    SVP of 3, but performed at both the heavy and the light work category.  His past work as a forklift

4    driver was medium, semi-skilled, SVP of 3.  His work as a package machine operator was medium,

5    unskilled with a SVP of 2, but performed at the heavy work category.  Plaintiff's work as a janitor

6    was medium, semi-skilled, SVP of 3.  AR 79.  As transferable skills, Plaintiff would be able to

7    operate a truck safely, to do safety inspections, to make it to a destination on schedule, to operate a

8    forklift correctly and safely and would be familiar with cleaning devices, such as buffers, vacuum

9    cleaners and strippers.  AR 79.

10       For the hypothetical questions, the ALJ asked the VE to assume a person of Plaintiff's age,

11   education and work history.  For hypothetical one, the ALJ asked the VE to assume a person who

12   could sit six hours, but stand and/or walk less than two hours each, could lift and/or carry less than

13   ten pounds occasionally, could never climb, balance, stoop, kneel, crouch, crawl or work around

14   hazards, would not have sufficient concentration for simple routine tasks and could have less than

15   occasional public contact.  The VE testified that a person with those limitations could not do any of

16   Plaintiff's past jobs.  AR 79-80.

17       For hypothetical two, the ALJ asked the VE assume a person who could work at jobs

18   involving sitting, standing, walking six out of eight hours each with normal breaks, could lift and

19   carry 20 pounds occasionally, ten pounds frequently, could occasionally climb, balance, stoop, kneel,

20   crouch or crawl, could perform simple routine tasks, could have occasional public contact and must

21   avoid hazards like moving dangerous machinery and unprotected heights.  The VE testified that a

22   person with those limitations could not do any of Plaintiff's past jobs, but there were other jobs that

23   could be done, such as office help, housekeeper and assembler of small products.  The VE eroded the

24   base for assembler of small products due to the heavy moving equipment.  AR 80.

25       Plaintiff's counsel asked the VE to add to the second hypothetical a left upper extremity

26   limited to frequent handling and fingering.  The VE testified it would further erode the assembler of

27   small products, but not the other two jobs.  AR 81.

28

4

1     Plaintiff's counsel next asked the VE to add to the second hypothetical fair abilities to follow

2   work rules, relate to co-workers, use judgment and function independently and poor abilities to deal

3   with the public, interact with supervisors, deal with work stress and maintain attention and

4   concentration.  The VE testified that these limitations would not have any effect on the jobs.  AR 81.

5     <u>Medical Record</u>

6     On February 6, 2008, Plaintiff scored a 23 on depression screen PHQ-9, which suggested

7   severe depression.  He was working on scheduling an appointment with the mental health clinic.  AR

8   416-18.  He reported to Dr. William Bishop that he had achiness in his right shoulder for about a

9   year and achiness in his left heel for about 3-4 months, along with chronic low back pain.  Dr.

10  Bishop believed that the heel pain was probably coming from Plaintiff's back.  As Plaintiff had not

11  been treated since September 2006, he was to restart his medications, including Prozac pending

12  follow-up with mental health.  AR 419-20, 581-83.

13    On March 4, 2008, Plaintiff saw Dr. Bishop for hypertension, hyperlipidemia and backache.

14  He was to continue on his current medications and return in 3 months.  AR 433, 576-78.

15    On April 9, 2008, Plaintiff sought mental health medication review and follow-up care from

16  Dr. Elmer Ignacio.  Plaintiff was last seen on June 5, 2006, and had not been on psychotropic

17  medication for more than one year.  He complained of feeling anxious, depressed and sleeping too

18  much with limited social activities.  On examination, his affect was constricted with underlying

19  dysphoric mood, limited insight and fair judgment.  He was able to attend to self and activities of

20  daily living.  Dr. Ignacio diagnosed a depressive disorder NOS with a GAF of 55.  Plaintiff was to

21  resume taking Fluoxetine.  AR 411-12.

22    On June 21, 2008, Plaintiff sought emergency room treatment after he blacked out.  He was

23  admitted and diagnosed with a syncopal episode.  AR 362-63, 366- 67.

24    On July 7, 2008, Plaintiff saw Dr. Bishop for hyperlipidemia and hypertension.  Plaintiff had

25  a slight weakness in his left hand grip, which was possibly old.  AR 433, 436.

26

27

28                                                                5

On July 29, 2008, Dr. G. Ikawa completed a Psychiatric Review Technique form. Plaintiff had a depressive disorder nos. As a result of this disorder, Dr. Ikawa opined that Plaintiff had mild restriction of activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace and no repeated episodes of decompensation. AR 340-50. Dr. Ikawa also completed a Mental Residual Functional Capacity Assessment form. He opined that Plaintiff had moderate limitations in the ability to understand, remember and carry out detailed instructions. He had no other significant mental functional limitations. AR 351-53.

On August 11, 2008, Plaintiff cancelled his appointment with Dr. Ignacio. AR 435.

On August 12, 2008, Dr. Miguel Hernandez completed a consultative internal medicine evaluation. Plaintiff complained of back pain, left leg numbness and pain, and manic depression. Dr. Hernandez noted that Plaintiff walked into the examination room with no difficulty, sat on the examination table with no problems and did not use an assistive device. On physical examination, Plaintiff's gait was normal and he had decent generalized tone throughout his upper and lower extremities bilaterally. There were no deformities of his left lower extremity. His motor strength was 5/5 throughout. On grip strength testing, he achieved about 50 pounds of pressure on the right and 60 pounds of pressure on the left. Dr. Hernandez diagnosed chronic low back pain, suspected degenerative disk disease of the lumbar spine appearing clinically stable, history of stroke with left-sided weakness in his presentation with mild residual left-sided weakness and almost none discernible in the examination. Based on the objective physical findings, Dr. Hernandez opined that Plaintiff could stand and walk about six hours in an eight-hour day with routine breaks. Due to his left leg, numbness and chronic back pain, during acute flare-ups Plaintiff might require more frequent breaks. Plaintiff could be expected to sit six hours in an eight-hour day with routine breaks. He could lift or carry 20 pounds occasionally and 10 pounds frequently. He had occasional postural limitations on bending, stooping, and crouching, especially in a repetitive manner due to chronic low back pain. He had no manipulative limitations. Dr. Hernandez indicated that the left-sided weakness from the stroke appeared to have resolved with minimal to no residual noted on examination. Environmental

1    limitations were attributable to Plaintiff's manic depression.  AR 357-61.

2           On August 25, 2008, Dr. J. Glaser completed a Physical Residual Functional Capacity

3    Assessment form.  He opined that Plaintiff could lift 20 pounds occasionally, 10 pounds frequently,

4    could stand and/or walk about 6 hours in an 8-hour workday and could sit about 6 hours in an 8-hour

5    workday.  Plaintiff also occasionally could climb, balance, stoop, kneel, crouch and crawl.  He was

6    limited to occasional overhead reaching with his left upper extremity, but could frequently handle and

7    finger with his left upper extremity.  He had no visual, communicative limitations or environmental

8    limitations.  AR 402-06.

9           On October 6, 2008, Plaintiff saw Dr. Bishop for hypertension, hyperlipidemia and backache.

10   Dr. Bishop noted that Plaintiff had chronic back pain and some upper thoracic discomfort.  A MRI

11   from September 2003 showed mild multilevel DJD w/o stenosis or foraminal narrowing.  Dr. Bishop

12   believed that Plaintiff had a syncopal episode in June 2008, not a seizure.  AR 481-83.

13          On October 9, 2008, Plaintiff cancelled his appointment with Dr. Ignacio.  AR 480.

14          On October 24, 2008, x-rays showed mild spurring of Plaintiff's lower thoracic spine and DJD

15   at the C5/6 level of his cervical spine.  AR 484.

16          On January 30, 2009, Plaintiff complained about his right shoulder and some radicular type

17   pain to his left heel from his back.  On examination, he had "some crepitence right shoulder," but full

18   range of motion.   Dr. Bishop ordered a right shoulder x-ray.  The x-ray showed mild djd and possibly

19   a small spur.  AR 563-66.

20          On March 5, 2009, Plaintiff saw Dr. Ignacio for mental health follow-up care and a

21   medication check.  Dr. Ignacio noted that Plaintiff was last seen by mental health on April 9, 2008.

22   Plaintiff claimed that he still had a low mood and slept too much.  On examination, his affect was

23   constricted with underlying dysphoric mood.  He had limited insight and fair judgment, but was able

24   to attend to his activities of daily living.  He appeared clinically the same and was to continue taking

25   Fluoxetine.  AR 560-61.

26          On May 13, 2009, Plaintiff complained of chronic right shoulder pain and back pain.  Dr.

27   Bishop recommended a back x-ray and an orthopedic referral for his shoulder.  AR 559.  X-rays of

28                                                              7

1    Plaintiff's right shoulder dated May 29, 2009, were unremarkable.  AR 520.  X-rays of his

2    lumbosacral spine showed mild degenerative changes with osteophyte formation and endplate

3    sclerosis most prominent L1/L2 and L2/L3.  AR 521.

4         On June 8, 2009, Plaintiff had an orthopedic consultation for his shoulder pain.  Plaintiff

5    described pain with any activities, especially raising, reaching and lifting.  He occasionally felt a

6    popping sensation.  On examination, Plaintiff had full range of motion and good strength in his

7    rotator cuff and subscapularis.  He had some tenderness over the biceps tendon and mild

8    impingement.  Plaintiff was given an injection.  AR 556.

9         On July 10, 2009, Dr. Ignacio completed a medication review and provided follow-up care.

10   Plaintiff reported feeling irritable and angry, more so because his back pain was progressing.  He also

11   reported feeling anxious and depressed.  On examination, his affect was constricted with underlying

12   dysphoric mood.  He had limited insight and fair judgment.  There was no major change noted

13   clinically.  Plaintiff was to continue taking Fluoxetine for maintenance.  AR 554-55.

14        On October 26, 2009, Plaintiff saw Dr. Bishop and reported that his shoulder injection did not

15   help.  Dr. Bishop prescribed vicodin in a low dose for Plaintiff's back pain.  AR 552-53.

16        On December 3, 2009, Plaintiff saw Dr. Ignacio for mental health follow-up and medication

17   review.  Plaintiff reported still feeling irritable and angry, but not as much as in the past.  He also

18   reported feeling anxious and depressed.  He had a low mood, but not as much as in the past.  On

19   examination, he was alert and oriented with no sign of personal neglect and he was able to sustain

20   conversation without any sign of psychosis.  His affect was constricted with underlying dysphoric

21   mood.  He had limited insight and fair judgment.  He was able to attend to himself and his activities

22   of daily living.  Dr. Ignacio indicated that there was no major change noted clinically.  Plaintiff was to

23   continue taking Fluoxetine and have a follow-up appointment in 16 weeks.  AR 540-41.

24        On December 9, 2009, Dr. Ignacio provided a Complete Medical Report (Mental) form.  He

25   identified Plaintiff's clinical findings as "[d]epressed, low mood, crying spell, doesn't want to do

26   anything [and] unable to work."  Plaintiff had a diagnosis of depressive disorder nos.  His response to

27   treatment was marginal and his prognosis was fair to guarded.  AR 596.

28

8

Dr. Ignacio also completed a Medical Assessment of Ability to Do Work-Related Activities (Mental) form.  He opined that Plaintiff had fair abilities to follow work rules, relate to co-workers, use judgment and function independently.  However, he had poor abilities to deal with the public, interact with supervisors, deal with work stress and maintain attention/concentration.  Dr. Ignacio opined that Plaintiff was not to operate machines.  Dr. Ignacio further stated that Plaintiff had a fair ability to relate and interact with supervisors and co-workers, a fair ability to understand, remember and carry out an extensive variety of technical and/or complex job instructions and a fair ability to understand, remember and carry out simple one-or-two job instructions.  He had a poor ability to deal with the public, a poor ability to maintain concentration and attention for at least two hour increments and a poor ability to withstand the stress and pressures associated with an eight-hour work day and day-to-day activity.  Plaintiff was competent to handle his own funds.  He also had fair ability to maintain his personal appearance and to behave in an emotionally stable manner.  He had poor ability to relate predictably in social situations and to demonstrate reliability.  Dr. Ignacio opined that Plaintiff could not do tasks requiring full attention.  AR 597-98.

On December 14, 2009, Dr. Bishop completed a Questionnaire form and opined that Plaintiff had medical problems that precluded him from performing any full-time work at any exertion level.  Dr. Bishop indicated that sedentary work was difficult because Plaintiff could not sit for long periods because of his back.  Plaintiff's primary impairments included chronic back pain, radiation to left leg and right shoulder.  Dr. Bishop based his opinion on DJD.  He stated that Plaintiff could sit for less than one hour at one time and stand and/or walk 20-30 minutes at one time.  Over an 8-hour period, Plaintiff could sit 2-3 hours and stand and/or walk 1-2 hours.  Dr. Bishop noted that the Questionnaire was based on "patient[']s description" on December 13, 2009.  AR 600.

On April 9, 2010, Plaintiff saw Dr. Ignacio for medication review and follow-up mental health care.  Plaintiff's affect was constricted with underlying dysphoric mood.  There were no major changes noted clinically.  He was prescribed a low dose of Trazodone for sleep and to augment the anti-depressant effect.  AR 611-12.

On April 19, 2010, Dr. Bishop prescribed a muscle relaxer for Plaintiff's back and ordered an

9

1    x-ray of Plaintiff's left heel.  AR 608-09.

2         On January 6, 2011, a lumbar spine MRI revealed multilevel degenerative disc disease and left

3    lateral extraforaminal disc herniation with likely impingement of the L3 nerve root.  AR 615.

4         ALJ's Findings

5         The ALJ found that Plaintiff met the insured status requirements through December 31, 2010,

6    and had not engaged in substantial gainful activity since January 1, 2008.  The ALJ further found that

7    Plaintiff had the severe impairments of obesity, chronic back pain, status post cerebral vascular

8    accident and depression.  Despite these impairments, the ALJ determined that Plaintiff retained the

9    residual functional capacity ("RFC") to perform light work, except he was limited to occasional

10   climbing, balancing, stooping, kneeling, crouching and crawling, should avoid working around

11   hazards, such as dangerous machinery or unprotected heights, could perform simple, repetitive tasks

12   and could have occasional contact with the public.  With this RFC, the ALJ concluded that Plaintiff

13   could perform jobs existing in the national economy.  AR 44-50.

14                                    **SCOPE OF REVIEW**

15        Congress has provided a limited scope of judicial review of the Commissioner's decision to

16   deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the

17   Court must determine whether the decision of the Commissioner is supported by substantial evidence.

18   42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*,

19   402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112,

20   1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as

21   adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be

22   considered, weighing both the evidence that supports and the evidence that detracts from the

23   Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the

24   evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.*,

25   *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the

26   Commissioner's determination that the claimant is not disabled if the Commissioner applied the

27   proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See*

28                                          10

1   *Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

2   <center>**REVIEW**</center>

3       In order to qualify for benefits, a claimant must establish that he is unable to engage in

4   substantial gainful activity due to a medically determinable physical or mental impairment which has

5   lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. §

6   1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of such severity

7   that he is not only unable to do his previous work, but cannot, considering his age, education, and

8   work experience, engage in any other kind of substantial gainful work which exists in the national

9   economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the

10  claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

11      In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations

12  which contain, inter alia, a five-step sequential disability evaluation process.  20 C.F.R. §§

13  404.1520(a)-(g), 416.920(a)-(g).  Applying the process in this case, the ALJ found that Plaintiff: (1)

14  had not engaged in substantial gainful activity since January 1, 2008; (2) has an impairment or a

15  combination of impairments that is considered "severe" (obesity, chronic back pain, status post

16  cerebral vascular accident and depression) based on the requirements in the Regulations (20 C.F.R. §§

17  404.1520(c)), 416.920(c); (3) does not have an impairment or combination of impairments which

18  meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4)

19  cannot perform his past relevant work; but (5) can perform jobs that exist in significant numbers in

20  the national economy.  AR 44-50.

21      Here, Plaintiff claims error because: (1) the Appeals Council failed to address significant new

22  evidence; (2) the ALJ failed to give sufficient reasons to reject the opinions of Drs. Bishop and

23  Ignacio; and (3) the ALJ failed to give sufficient reasons to discredit Plaintiff's testimony.

24  <center>**DISCUSSION**</center>

25  A.   Evidence Before Appeals Council

26      Plaintiff first argues that the Appeals Council committed reversible error by incorporating new

27  evidence into the record, but failing to address is specifically in declining review.  The new evidence

28  <center>11</center>

1  is a MRI dated January 6, 2011, showing multilevel degenerative disc disease and a left lateral

2  extraforaminal herniated disc at L3-L4, with likely impingement on the L3 nerve root.  AR 614-15.

3        Plaintiff contends that this evidence tends to support the opinion of Plaintiff's treating

4  physician, Dr. Bishop, which was rejected by the ALJ.  The Commissioner counters that this new

5  evidence does not merit remand pursuant to sentence six of 42 U.S.C. § 405(g), because (1) Plaintiff

6  did not show good cause for failing to provide it earlier and (2) it was not material.  *See Mayes v.*

7  *Massanari*, 276 F.3d 453, 460-62 (9th Cir. 2001).

8        A district court "consider[s] on appeal both the ALJ's decision and the additional material

9  submitted to the Appeals Council." *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir.1993) (citations

10  omitted). The district court may remand a case to the Commissioner for consideration of new

11  evidence, but may do so only when the new evidence is material. *See Clem v. Sullivan*, 894 F.2d 328,

12  332 (9th Cir.1990).  Evidence is material "where there is a reasonable possibility that the new

13  evidence would have changed the outcome of the [Commissioner's] determination had it been before

14  him." *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380 (9th Cir.1984) (internal

15  quotation marks, emphasis, and citation omitted); *see also* 42 U.S.C. § 405(g) (the district court "may

16  at any time order additional evidence to be taken before the Commissioner of Social Security, but

17  only upon a showing that there is new evidence [that] is material"). Moreover, the evidence must

18  "relate[ ] to the period on or before the date of the [ALJ's] decision." 20 C.F.R. § 416.1476(b)(1).

19        The period at issue is January 1, 2008 (date of alleged onset) to July 23, 2010 (date of the

20  ALJ's unfavorable decision).  In this case, the new evidence relates to a herniated disc and

21  impingement found subsequent to the ALJ's disability determination and does not relate to Plaintiff's

22  medical condition prior to the ALJ's decision.  Plaintiff admits that the new evidence is subsequent to

23  the ALJ's decision in July 2010, but argues that it shows the "trajectory of worsening L3 nerve

24  impingement."  Opening Brief, p. 4.  However, the record evidence prior to the ALJ's decision does

25  not contain any clinical findings of nerve root impingement.  At most, the medical evidence included:

26  (1) a 2003 MRI that revealed mild multilevel degenerative disk disease without stenosis or foraminal

27  narrowing (AR 481-83); (2) October 2008 x-rays that showed mild spurring of the lower thoracic

28

12

1    spine and degenerative disc disease at the C5/6 level of the cervical spine (AR 484); and (3) May

2    2009 x-rays of the lumbosacral spine that showed mild degenerative changes with osteophyte

3    formation and endplate sclerosis most prominent L1/L2 and L2/L3 (AR 521).  Moreover, Dr.

4    Bishop's opinion regarding Plaintiff's functional limitations was not based on any evidence of nerve

5    root impingement.  AR 600.

6         Accordingly, the Court finds that the new evidence presented by the Plaintiff cannot be

7    considered material for the period prior to July 23, 2010, and does not warrant remand.

8    B.    Dr. Bishop's Opinion

9         Plaintiff next argues that the ALJ failed to provide sufficient reasons for rejecting the opinion

10   of his treating physician, Dr. Bishop.

11        In this circuit, cases distinguish the opinions of three categories of physicians: (1) treating

12   physicians; (2) examining physicians; and (3) non-examining physicians. *Lester v. Chater*, 81 F.3d

13   821, 830 (9th Cir.1996).  Generally, the opinion of a treating physician is afforded the greatest weight

14   in disability cases, but it is not binding on an ALJ in determining the existence of an impairment or on

15   the ultimate issue of disability. *Id.*; *see also Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989).

16        When the opinion of a treating physician is not contradicted, an ALJ must set forth "clear and

17   convincing" reasons to reject the opinion. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991).

18   Further, an ALJ only may reject the contradicted opinion of a physician with "specific and legitimate"

19   reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830; *see also Thomas v.*

20   *Barnhart*, 278 F.3d 947, 957–58 (9th Cir.2002).  Here, because the opinion of Dr. Bishop was

21   contradicted by the opinions of Dr. Hernandez and the non-examining state agency physicians, the

22   ALJ was required to set forth specific and legitimate reasons to reject the opinion.

23        The ALJ gave "little weight" to Dr. Bishop's opinion that Plaintiff could not perform even

24   sedentary work since 2001 because it was not supported by the objective medical evidence.  AR 47.

25   An ALJ may reject a treating physician's opinion that is inconsistent with the record and not

26   supported by objective evidence. *See Meanel v. Apfel*, 172 F.3d 111, 1113-14 (9th Cir. 1999).  The

27   ALJ cited a MRI completed in 2003 that revealed only mild degenerative joint disease without

28                                               13

1   stenosis or foraminal narrowing and normal muscle tone and strength, along with claimant's report

2   that his left-sided weakness had improved.  AR 47, 72-74, 481-83.

3          The ALJ also rejected Dr. Bishop's opinion because it was inconsistent with Plaintiff's work

4   history, which included full-time work until January 2008 and seasonal truck driving in 2009.  AR 47.

5   An ALJ properly may discount a physician's opinion that is inconsistent with a claimant's work

6   history.  *See Rollins v.* Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ properly rejected treating

7   physician's restrictions that appeared inconsistent with the claimant's level of activity); *Thomas v.*

8   *Astrue*, 2010 WL 144834, *15 (E.D. Cal. Jan. 11, 2010) (ALJ properly discounted treating

9   physician's opinion that was inconsistent with claimant's work history).

10         Plaintiff attempts to argue that his seasonal truck driving is an unsuccessful work attempt that

11   should not be held against him.  Opening Brief, p. 5.  Plaintiff is incorrect and mischaracterizes the

12   evidence.  The Social Security Administration considers work that a claimant is forced to stop or to

13   reduce below the substantial gainful activity level after a short time because of his/her impairment to

14   be an unsuccessful work attempt.  20 C.F.R. §§ 404.1574(c), 416.974(c); Social Security Ruling 05-

15   02 (unsuccessful work attempt will not show that a claimant is able to do substantial gainful activity).

16   In this case, there is no indication that Plaintiff either was forced to stop work in 2008 or was forced

17   to reduce his work to only seasonal truck driving because of any impairment.  Indeed, Plaintiff

18   testified that he stopped work in 2008 because he was fired following multiple wrecks and his

19   seasonal work ended, by definition, because it was seasonal.  AR 58-62, 74-75.  He also indicated that

20   his driver's privilege was never restricted because of any impairment.  AR 63-64.  Thus, his seasonal

21   work was not an "unsuccessful work attempt."

22         Accordingly, the ALJ provided specific and legitimate reasons, supported by substantial

23   evidence, to assign little weight to Dr. Bishop's opinion.

24   C.     Dr. Ignacio's Opinion

25         Plaintiff next argues that the ALJ failed to provide sufficient reasons to reject Dr. Ignacio's

26   opinion.  As with Dr. Bishop's opinion, the ALJ could reject the contradicted opinion of Dr. Ignacio

27   only with "specific and legitimate" reasons, supported by substantial evidence in the record. *Lester*,

28                                                    14

1   81 F.3d at 830.

2         Dr. Ignacio opined that Plaintiff had a poor ability to relate predictably in social situations,

3   demonstrate reliability, deal with the public, interact with supervisors, deal with work stress and

4   maintain attention and concentration.  AR 47.  The ALJ first assigned "little weight" to this opinion

5   because it was inconsistent with Dr. Ignacio's own treatment notes.  An ALJ may properly reject an

6   opinion that is contradicted by the doctor's own treatment notes.  *See Tommasetti v. Astrue*, 533 F.3d

7   1035, 1041 (9th Cir. 2008) (permissible to reject doctor's opinion that is inconsistent with medical

8   record).  Dr. Ignacio's treatment notes indicated that Plaintiff was alert, oriented, was able to sustain

9   conversation, had fair impulse control and judgment, was not helpless or hopeless and was able to

10  attend to self and activities of daily living.  AR 47, 412.

11        Plaintiff argues that Dr. Ignacio supported his opinion with "repeated [ ] clinical findings of

12  constricted affect, dysphoric mood, limited insight and fair judgment and impulse control," which the

13  ALJ failed to acknowledge.  Opening Brief, p. 6.  However, Dr. Ignacio did not state that his opinion

14  was based on these findings.  Rather, Dr. Ignacio based his opinion on Plaintiff's depressed mood,

15  crying spells, lack of motivation to do anything and his marginal response to treatment.  AR 596.

16  Plaintiff's reference to other clinical findings does not undermine the ALJ's determination that Dr.

17  Ignacio's opinion was contradicted by his treatment notes regarding Plaintiff's functional abilities,

18  including the ability to attend to self and to activities of daily living.

19        Additionally, the ALJ assigned little weight to Dr. Ignacio's opinion because it was

20  inconsistent with Plaintiff's testimony that he performs seasonal truck driving every year.  AR 47.  As

21  with Dr. Bishop's opinion, the ALJ properly discounted Dr. Ignacio's opinion because it was

22  inconsistent with Plaintiff's own work history.  *See Rollins*, 261 F.3d at 856; *Thomas*, 2010 WL

23  144834 at *15.

24        For these reasons, the Court finds that the ALJ's analysis of Dr. Ignacio's opinion is supported

25  by substantial evidence and is free of legal error

26  D.    Plaintiff's Credibility

27        As a final argument, Plaintiff contends that the ALJ failed to provide sufficient reasons to

28                                              15

1   discredit his testimony.

2   The Court disagrees.

3        An ALJ must make specific findings and state clear and convincing reasons to reject a

4   claimant's symptom testimony unless affirmative evidence of malingering is suggested in the record.

5   *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1993); *see also Valentine v. Comm'r Soc. Sec.*

6   *Admin.*, 574 F.3d 685, 693 (9th Cir. 2009).  Here, there was no affirmative evidence of malingering

7   and therefore the ALJ was required to provide clear and convincing reasons to discredit Plaintiff's

8   testimony.

9        In this instance, the ALJ primarily discounted Plaintiff's testimony based on inconsistencies

10  between his reported limitations and his work history.  An ALJ may properly consider inconsistencies

11  in testimony or between testimony and conduct when weighing a claimant's credibility.  *Orn v.*

12  *Astrue*, 495 F.3d 625, 636 (9th Cir. 2007); *Thomas v. Barnhart*, 278 F.3d at 958-59.  The ALJ cited

13  the inconsistency between Plaintiff's assertion that he became unable to work because of his

14  condition in January 2008 and Plaintiff's report that he was laid off in January 2008 because he had

15  several accidents, along with his report that he was looking for employment after losing his job.  AR

16  48, 60-61, 242, 411.  When assessing credibility, an ALJ properly may consider the reason that a

17  claimant is out of work.  *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (ALJ properly

18  considered that claimant was out of work because he was laid off and not because of his allegedly

19  disabling injuries).

20       The ALJ also cited Plaintiff's testimony that he performs seasonal truck driving every year

21  and looked for another job after the season in 2009.  AR 48, 58-61.  Plaintiff claims that the ALJ

22  failed to recognize that Plaintiff did not work an 8-hour day during his seasonal work, rendering the

23  credibility analysis insufficient.  Opening Brief, p. 7.  However, the ALJ acknowledged that Plaintiff's

24  seasonal work did not constitute disqualifying substantial gainful activity, but found that such work

25  indicated that Plaintiff's activities were greater than reported.  This was a logical, proper conclusion

26  based on the evidence.  *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996).

27       The Court finds that the ALJ's credibility determination is supported by substantial evidence

28                                              16

and is free of legal error.

## RECOMMENDATION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence and is based on proper legal standards.  Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the administrative decision of the Commissioner of Social Security be DENIED and that JUDGMENT be entered for Defendant Michael J. Astrue and against Plaintiff Thomas Lopez.

These findings and recommendations will be submitted to the Honorable Anthony W. Ishii pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty (30) days after being served with these findings and recommendations, the parties may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    **April 9, 2012**                  _____**/s/ Dennis L. Beck**_____
                                                     UNITED STATES MAGISTRATE JUDGE

17